IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| Robert Heilman, | ) | |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| Jo Anne B. Barnhardt, | ) | Case No. 4:05-cv-089 |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Robert Heilman, seeks judicial review of the Social Security Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under sections 216 and 223 of Title II of the Act, 42 U.S.C. § 416(I), et. seq. (the "Act"). Chief Judge Daniel L. Hovland has referred this matter to the undersigned for preliminary consideration. For the reasons set forth below, the undersigned recommends that the court affirm the Commissioner's decision.

**I.   BACKGROUND**

    **A.   Procedural History**

On May 9, 2003, Heilman filed an application for DIB under Title II of the Act claiming he is unable to work because of a disabling condition. (Tr. 48). The Social Security Agency ("Agency") denied his application because it determined his condition was not severe enough to keep him from working. (Tr. 35). The Agency found that Heilman's conditions improved with treatment and that he was able to perform his job as a pizza delivery driver. Id. Heilman requested the Agency to reconsider its determination. (Tr. 38). The Agency had Heilman's claim independently evaluated by a physician and disability examiner in the State Agency. Id. The

1

Agency again denied his application because, while his injury caused some pain in his arm, his injury did not significantly limit his ability to perform his daily activities, namely a pizza delivery driver. (Tr. 40). Heilman was represented by an attorney, Paul Temanson, at the time of his initial DIB application. (Tr. 25, 36).

Heilman requested a hearing before an Administrative Law Judge ("ALJ") to review his application. (Tr. 258-268). The ALJ issued a decision on March 19, 2005, denying Heilman benefits after determining he was not disabled within the meaning of the Act. (Tr. 11-18). After the Appeals Council denied Heilman's request for review on June 28, 2005, Heilman then sought judicial review with this court by filing a complaint on August 9, 2005. (Tr. 4-6)

### B. Background Evidence

Heilman was born on September 3, 1952, and was 52 years old at the time of the ALJ hearing. (Tr. 262). He is single and has never married. He lives in a home alone and has been described as mentally challenged. (Tr. 263, Docket No. 7). He completed the tenth grade and has not obtain his GED. (Tr. 263).

On October 9, 2002, Heilman was injured while working at his lawn care job after he fell approximately five to ten feet from a ladder. (Tr 134, 136, 157). He lost consciousness and was taken to the emergency room. (Tr. 130). He remained unconscious for awhile but later awoke confused. Id. A plain X-ray revealed that he suffered a comminuted scapular fracture in his left shoulder from the fall. (Tr. 130, 136). A subsequent CT scan showed a "severely comminuted left scapular fracture with complete disruption of the glenoid cavity." (Tr. 136). Preliminary estimates were that he would not be able to work for two months. Id.

Heilman had surgery to repair his shoulder on October 25, 2002. (Tr. 158). A lag screw, a plate, and several smaller screws were needed to reconstruct the his shoulder. (Tr. 158). He began physical therapy on October 28, 2002, with First Choice Physical Therapy. (Tr. 189). At the first therapy session, he was given short and long term goals for his recovery. (Tr. 190). His prognosis for rehabilitation was good and his estimated length of treatment was up to three or four months. Id.

Heilman showed considerable improvements throughout his physical therapy sessions, and his sessions with First Choice Physical Therapy were discontinued on February 13, 2003. (Tr. 173-188). By his last physical therapy session, he had returned to work and was doing light activities. He still had some discomfort in his shoulder and complained of some dizziness and neck problems but was seeing a chiropractor for those concerns. (Tr. 173, 202-12). Records from the Chirocare Family Center show Heilman frequently visited the chiropractor. (Tr. 127-28). In 2004 alone, Heilman visited the Chirocare Family Center 14 times. Id.

As a result of the injury, Heilman received temporary worker's compensation benefits from November 27, 2002, until April 15, 2003. (Tr. 51-57). He received $2,044.35 between November 27, 2002, to January 21, 2003 and $173.48 from January 27, 2003, to February 8, 2003. (Tr. 55-56). He also received $640.34 for worker's compensation benefits for the period between February 23, 2003, and April 15, 2003. (Tr. 51-53).

Heilman went back to work for Smitty's Lawn Tree Snow ("Smitty's") service in February 2003. (Tr. 60). Records from Smitty's show Heilman earned $1,049.04 in October 2002 before his accident. (Tr. 65). He did not receive any income from Smitty's in January 2003, but was paid the following amounts during 2003: $998.58 in February, $896.31 in March, $822.33 in April,

$1,255.77 in May, $1,041.93 in June, $630.09 in July, $1,344.11 in August, $1,918.26 in September, $1,331.19 in October, $1,119.69 in November, and $380.52 for half of December. (Tr. 62-65). In 2004, Heilman earned $1,339.97 in October, $1,192.45 in November, and $576.81 in December. (Tr. 75).

Heilman claimed in his application for social security benefits that he earned $9.00 per hour and averaged 13 hours of work per week. (Tr. 109). He claimed he only earned $500 in February 2003, $800 in March 2003, and $855 in April 2003. (Tr. 110).

Heilman, along with his sister, submitted a payroll summary to this court from Smitty's that covered January 1, 2005, to November 4, 2005. (Docket No. 7). The payroll summary showed that Heilman's gross pay was $7,304.50 for that period, which is just under $730.45 per month.

In a Social Security Administration questionnaire submitted to Smitty's, the company's vice president, Jennifer Smith, indicated Heilman's work was fully worth the amount paid to him and that Smitty's gave special consideration to him because of his physical limitations. (Tr. 114). Smith indicated Smitty's gave Heilman fewer or easier jobs, special equipment, and expected lower production from him. Smith explained:

> There were times we would give a job to the tree cutting person because we did not feel Bobby could handle the job. He is slower than the other employees that have done the same job. Because of his weight, we have bought equipment that has an extension on it so he doesn't have to reach as far.

(Tr. 115). Smith also wrote that she has "been concerned about how much longer he will be able to do his job." Id. She stated that he "looks like it is hard on him but [that] he doesn't say so." Id. His questionnaire, however, showed he was not frequently absent from work and that his work was satisfactory. Id.

4

Besides working at Smitty's, Heilman has been a print operator and a pizza delivery person. (Tr. 98). On his social security benefit's application, he claimed he worked eight hours a day, five days a week. (Tr. 102). He claimed he walked and stood eight hours a day; climbed, kneeled, crouched five to eight hours a day; sat and crawled one to two hours a day; and handled, grabbed or grasped big objects and reached six to eight hours a day. Id. When asked on the questionnaire what was the heaviest weight he lifted at his job at Smitty's, he checked the boxes less than 10 pounds, 20 pounds, and 50 pounds. Id. He checked on the questionnaire the weight he lifted frequently was less than 10 pounds and 25 pounds. Id.

## II.    ALJ HEARING

On January 14, 2005, Heilman appeared via video conference without an attorney for the ALJ hearing. (Tr. 260). The hearing was conducted by Judge Halloway and present during the conference was James Berglie, a vocational expert, and Dr. Kevin Schumacher, a medical expert.

At the beginning of the hearing, the ALJ asked if Heilman wanted to proceed with the hearing without an attorney after his attorney withdrew from the case. (Tr. 260). Heilman responded that he was prepared to proceed without counsel. Id.

During the hearing, the ALJ admitted exhibits relating to payments and previous decisions, jurisdictional documents, worker's compensation benefits, and other medical and work related documents to determine Heilman's disability status. (Tr. 1-3, 261).

The ALJ asked if Heilman had continued to be employed while his social security claim was pending. (Tr. 263). Heilman said he was employed and that he did not know how much he was earning in 2004 because he had not seen his 2004 taxes. (Tr. 264). He said that he was working at the time of the ALJ hearing, but mostly in the summer at Smitty's. Id. The judge asked Heilman

if the records from Smitty's showing that he earned between $822 to $1,255 a month sounded correct. Id. Heilman responded, "Yeah, it varied." Id. Heilman stated that when he "balanced it out" it was about $1,050 per month. (Tr. 265). The ALJ asked if Heilman thought he earned about the same in 2004, and he responded that he did not know but thought that was right. Id. At the time of the hearing, Heilman was drawing unemployment and working at Smitty's. Id.

The ALJ asked Heilman why he requested the hearing and Heilman responded because when he is working during the summertime he hurts from his injuries and sometimes the injuries made it hard for him to work. (Tr. 265). The ALJ told Heilman that one of the requirements to draw social security benefits is that a person must not be substantially gainfully employed. (Tr. 266). The ALJ asked Heilman if he believed the hours he worked were worth what his employer paid him and Heilman said they were. (Tr. 267).

## III.  ANALYSIS AND DISCUSSION

### A.  Governing Law

"To be eligible for disability insurance benefits, a claimant has the burden of establishing the existence of a disability under the Act. 42 U.S.C. § 423(a)(1)(D). To meet this burden, the claimant must show: (1) a medically determinable physical or mental impairment that has lasted, or can be expected to last, for not less than twelve months; (2) an inability to engage in any substantial gainful activity; and (3) that this inability results from the impairment. 42 U.S.C. § 423(d)(1)(A)." Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). To receive benefits, a claimant must not only have an impairment that lasted, or can be expected to last for not less than twelve months, the claimant's inability to engage in any substantial gainful employment must have lasted, or can be expected to last, for not less than twelve months. Barnhart v. Walton, 535 U.S. 212, 217-19 (2002);

see also 20 C.F.R. 404.1509 (The impairment must have lasted or must be expected to last for a continuous period for at least 12 months.).

"Substantial gainful activity" is defined under the regulations as the ability to do any significant productive work for profit, even if only part-time, and even if it is less than what the claimant previously was able to do. 20 C.F.R. §§ 404.1510 & 404.1572; see Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998); Titus v. Sullivan, M.D., 4 F.3d 590, 595 (8th Cir. 1993) (stating that "inability to do any work" is not a more restrictive test for disability under the Act than the ability to do "any substantial gainful activity"). However, there must be some ability to do work on a regular basis and usually it must be for more than a few hours a day although the amount the person is capable of earning is also a factor. See e.g., Burkhalter v. Schweiker, 711 F.2d 841, 843-845 (8th Cir. 1983) (concluding that the ability to work five hours a day, five days as week, and earn more than $300 per month in 1983 was gainful activity and distinguishing cases that working only sporadically or only a few hours a day is not gainful activity).

In evaluating a claimant's work activity for substantial gainful activity purposes, generally, the Agency's primary consideration is the earnings the claimant derived from work activity. 20 C.F.R. § 404.1574(a). The Agency uses the earnings to determine if the claimant has done substantial gainful activity unless the Agency has information that shows all of the earnings should not count. 20 C.F.R. § 404.1574(a)(1). The Agency will only consider the amounts a claimant earns and will not consider subsidies; for example, a person receives subsidies when a person is being paid more than the reasonable value of the actual services performed. 20 C.F.R. § 404.1574(a)(2).

The Agency has established an earnings guideline to help determine if the amounts earned by a claimant constitute a substantial gainful activity. 20 C.F.R. § 404.1574(b). The Agency

generally uses an average of the claimant's earning to determine whether the claimant is engaged in substantial gainful activity and compares the average to an amount determined by a formula. Id. For 2003 and 2004, a person is considered substantially gainfully employed if the claimant earns more than $800 and $810 respectively. 20 C.F.R. § 404.1574(b)(2)(ii)(B); Dukes v. Barnhart, 2006 WL 278133 (8th Cir. February 7, 2006) (citing Program Operations Manual System DI 10501.015 *available at* http://www.ssa.gov/OACT/COLA/SGA.html).

"Substantial gainful activity" under the Act includes any substantial gainful work that exists in the national economy, regardless of (1) whether such work exists in the immediate area in which the claimant lives, (2) whether a specific job vacancy exists for the claimant, or (3) whether the claimant would be hired if he or she applied for work. 42 U.S.C. § 423(d)(2)(A). Work available in the national economy with respect to a particular person means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.

In deciding whether a claimant is disabled within the meaning of the Act, the ALJ is required to use the five-step sequential evaluation mandated by 20 C.F.R. § 404.1520 and determine:

(1) whether the claimant is presently engaged in a substantial gainful activity,

(2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities,

(3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations,

(4) whether the claimant has the residual functional capacity to perform his or her past relevant work, and

(5) if the claimant cannot perform the past work, the burden then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

"The first step in determining whether a claimant is disabled is to ascertain whether the claimant engaged in substantial gainful employment during the relevant period." Comstock v. Chater, 91 F.3d 1143, 1145 (8th Cir. 1996) (citing 20 C.F.R. §§ 404.1520(b), 416.920(b)). "If a claimant engages in substantial gainful activity, there can be no finding of disability, even if the claimant does in fact have an impairment." Id. If the claimant "cannot satisfy the first step of the five-part test, there is no need to consider the remaining steps in evaluating his [or her] disability claim." Dukes v. Barnhart, 2006 WL 278133 at *4.

### B. Standard of review

The scope of this court's review is limited in that it is not permitted to conduct a *de novo* review. Rather, the court looks at the record as a whole to determine whether the Commissioner's decision is supported by substantial evidence. Ellis v. Barnhart, 392 F.3d at 993.

Substantial evidence is less than a preponderance, but more than a scintilla of evidence. Nelson v. Sullivan, 966 F.2d 363, 366 n.6 (8th Cir. 1992); Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Nelson v. Sullivan, 966 F.2d at 366 n.6 (quoting Richardson v. Perales, 402 U.S. 389, 401(1971)).

Under the substantial evidence standard, it is possible for reasonable persons to reach contrary, inconsistent results. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). Thus, the standard "embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." Id. Consequently, the court is required to affirm a Commissioner's decision that is supported by substantial evidence - even when the court would weigh the evidence differently and reach an opposite conclusion. Id.

In conducting its review, the court is required to afford great deference to the ALJ's credibility assessments when the ALJ has seriously considered, but for good reason has expressly discounted, a claimant's subjective complaints, and those reasons are supported by substantial evidence based on the record as a whole. See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999); Brockman v. Sullivan, 987 F.2d 1344, 1346 (8th Cir. 1993). The Eighth Circuit has stated, "Our touchstone is that a claimant's credibility is primarily a matter for the ALJ to decide." Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003).

Nonetheless, the court's review is more than a search for evidence that would support the determination of the Commissioner. The court is required to carefully consider the entire record in deciding whether there is substantial evidence to support the Commissioner's decision, including evidence unfavorable to the Commissioner. Ellis v. Barnhart, 392 F.3d at 993.

**C.     Application and Analysis**

In the ALJ's written findings, he determined that Heilman was not entitled to DIB because he was substantially gainfully employed since his injury's onset date of October 9, 2002. (Tr. 15). The ALJ found that Heilman had been working for Smitty's since February 28, 2003, and was earning an average of over $1,100.00 per month. (Tr. 17).

Heilman's testimony at the ALJ hearing, and evidence of his earnings at Smitty's, show that Heilman earned more than the presumptive amount set out in the Agency's guidelines for substantial gainful employment. A financial report from Smitty's showed that he received more than the $800 presumptive amount in 2003 for nine out of the twelve months. (Tr. 62-65). The records available for 2004 show he earned an average of $1,036.41 per month. (Tr. 75). Heilman testified at the ALJ hearing that he averaged about $1,050 per month in 2003 and about the same in 2004. (Tr. 264-65).

The factual scenario in this case is remarkably similar to a recent Eighth Circuit case that held a claimant was substantially gainfully employed and not entitled to social security benefits. Dukes v. Barnhart, 2006 WL 278133. In Dukes, a claimant applied for social security benefits on April 24, 2000, claiming disability due to asthma, ulcers, depression, anxiety, and high blood pressure. Id. at * 1. Tests also showed that he had a full scale IQ of 77. Id. at * 2. In November 2000, the claimant began working as a laundry worker somewhere between 28 and 32 hours per week. Id. at * 1. At the time of the ALJ hearing, the claimant was working at the laundry company and averaging $1,053.16 per month. Id. at * 4. The ALJ, district court, and Eighth Circuit held the claimant was engaged in substantial gainful employment because he earned more than $400 more than the limit determined by the regulations. Id. Therefore, the court denied him benefits stating that he did not satisfy the first step of the five-part test. Id.

Similar to the claimant in Dukes, the amount Heilman earned is significantly more than what the Agency's guidelines consider as evidence of substantial gainful employment. More particularly, the record reflects that there is no 12-month period between the date of the onset of the injury and the hearing before the ALJ during which Heilman averaged less than the presumptive monthly amount.[1] Further, his earnings were not subsidized because Smitty's considered his work worth the amount that he was paid.

---

[1] The court is cognizant of the fact that no financial information was provided for January 2004 through September 2004. While it may have been better if the ALJ had requested this information in terms of fully developing the record given that the claimant was not represented and his other limitations, the claimant did testify that his earnings during 2004 were roughly the same as in 2003 and there is no indication that the claimant's testimony was not credible or that he was merely guessing. Also, no contrary information was presented to the Appeals Council. Finally, even if Heilman had earned on an average somewhat less during those months, it is very unlikely there would have been a continuous 12-month period during which he averaged less than the presumptive amount because of the amounts that he earned before and after that period, including $1,119.69 in November 2003 and $1,339.97 in October 2004.

In addition, Heilman testified that he was earning unemployment benefits while he was working at Smitty's. (Tr. 265). When a claimant collects unemployment benefits, it is evidence in itself that the claimant admits that he or she has the ability to work because application for unemployment benefits requires the individual to hold him or herself out as available, willing, and able to work. Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997).

After careful consideration of the a record as a whole, there is substantial evidence for the Commissioner's decision that Heilman was engaged in substantial gainful employment during the relevant time period. Hence, the Commissioner was correct in concluding that Heilman was not entitled to benefits without further consideration of his physical limitations based on the case law previously cited.

For purposes of this appeal, the court can only look at the evidence that relates to the period before the date of the ALJ's decision. See Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000) (citing 20 C.F.R. § 404.970(b)). Claimant and his family have submitted to the court certain information that suggests Heilman earned, on an average, less than the presumptive amount for the year 2005 and that his doctor has recently imposed a permanent restriction on his physical activity that may also indicate he is now disabled. Heilman may want to consider filing a new application for benefits if his circumstances have materially changed. Further, if he cannot afford counsel, he might try contacting Legal Services of North Dakota to determine whether he would be eligible for assistance.

**IV.  CONCLUSION**

Based on the foregoing, it is **HEREBY RECOMMENDED** that:

1. Defendant's motion for summary judgment (Doc. No. 8) be granted and that plaintiff's motion for summary judgment (Doc. No. 7) be denied.

2. That plaintiff's appeal be dismissed.

**<u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>**

Pursuant to Local Rule 72.1(3)(4), any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation.

Dated this 10th day of February, 2006.

/s Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge